OPINION *Page 2 
¶ 1} Defendants-appellants Wilson Property Management, Inc. d/b/a Seattle's Coffee House, Andrew Wilson and Shelly Wilson (hereinafter collectively referred to as "Appellants") appeal the June 25, 2004 Judgment Entry of the Holmes County Municipal Court in favor of Plaintiff-appellee Eagle B Leasing Company, Ltd.
 STATEMENT OF THE FACTS AND CASE {¶ 2} On April 11, 2002, the parties entered into a written lease agreement (hereinafter "Lease Agreement") whereby Appellants leased the first floor of a three story building owned by Appellee Eagle B Leasing Company, Ltd. and located in downtown Millersburg, Ohio. William T. Baker is the manager of Eagle B Leasing Company, Ltd. Appellants utilized the premises to operate a coffee shop known as Seattle's Coffee House.
 {¶ 3} At the time Appellants took possession, the property was vacant and had new restrooms. The hardwood floors in the premises were about 100 years old, contained oil stains all over the floor, big metal patches and about four layers of glue. Upon taking possession, Appellants removed the nails and metal patches, sanded the floor and applied a polyurethane finish. Appellants sandblasted and sealed an interior brick wall, put in sub-flooring in the kitchen and installed tile. Appellants had a hallway wall installed. Appellants brought several trade fixtures into the premises.
 {¶ 4} Appellants also constructed a 22 foot bar. William Baker provided Appellants approximately 22 feet of four foot wide maple bowling alley flooring to be used to construct the bar top. Appellants used the boards in constructing the bar top. *Page 3 
The bowling alley flooring came from the second floor of the building, known as the Ten Pin Club.
 {¶ 5} During the second half of 2003, Appellants became delinquent in their payment of common area charges. Appellee filed a complaint for forcible entry and detainer on December 31, 2003. Upon receipt of the eviction notice, Appellants removed their trade fixtures, including the 22 foot bar from the premises. In the process of removing the bar, Appellants scratched and/or gouged the hardwood floor in a few areas.
 {¶ 6} Following a bench trial, the trial court rendered judgment in favor of Appellee on May 11, 2004. Appellants timely requested findings of fact and conclusions of law. Via Judgment Entry of June 25, 2004, the trial court entered findings of fact and conclusions of law, granting judgment in favor of Appellee.
 {¶ 7} Appellants filed a timely notice of appeal. On October 28, 2004, this court stayed the within appeal due to Appellants' filing bankruptcy. On January 10, 2007, this Court reinstated the appeal.
 {¶ 8} Appellants assigns as error:
 {¶ 9} "I. THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY AWARDING THE APPELLEE $5,300 FOR THE COST TO REPLACE THE BAR IN THE LEASED PREMISES, CONTRARY TO THE TERMS OF THE LEASE AGREEMENT AND THE EVIDENCE PRESENTED AT TRIAL.
 {¶ 10} "II. THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY AWARDING THE APPELLEE $4,500 FOR THE COST TO REPAIR THE HARDWOOD *Page 4 
FLOOR IN THE LEASED PREMISES, CONTRARY TO THE TERMS OF THE LEASE AGREEMENT AND THE EVIDENCE PRESENTED AT TRIAL.
 {¶ 11} "III. THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY AWARDING THE APPELLEE $300 TO REPAIR THE REAR DOOR AND REPLACE THE LOCKS OF THE LEASED PREMISES, CONTRARY TO THE TERMS OF THE LEASE AGREEMENT AND THE EVIDENCE PRESENTED AT TRIAL.
 {¶ 12} "IV. THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY ORDERING THE APPELLANT TO RETURN THE BAR TOP, CONTRARY TO THE TERMS OF THE LEASE AGREEMENT AND THE CAUSE OF ACTIONS PLEAD BY THE APPELLEE."
 I {¶ 13} In the first assignment of error, Appellants assert the trial court erred in awarding Appellee the cost to replace the bar. Specifically, Appellants maintain the bar was a trade fixture, and pursuant to the terms of the lease, removable.
 {¶ 14} Appellants cite Item 8(a) of the Lease Agreement, which reads: "All alterations or improvements excluding Tenant's trade fixtures, shall upon termination of this lease, remain upon the premises and shall belong to lessor."
 {¶ 15} Black's Law Dictionary defines "trade fixtures" as:
 {¶ 16} "Articles placed in or attached to leased property by the tenant, to facilitate the trade or business for which he occupies the premises, or to be used in connection with such business, or promote convenience and efficiency in conducting it. Such personal property as merchants usually possess and annex to the premises occupied by them to enable them to store, handle, and display their goods, which aregenerally *Page 5 
 removable without material injury to the premises. Unlike regular fixtures, trade fixtures are not considered part of the realty." (Emphasis added.)
 {¶ 17} Upon review of the record, we find the bar constructed by Appellants was generally removable without material injury to the premises. While testimony at trial established Appellants did in fact cause significant damage to the hardwood floors while removing the bar; nonetheless, the bar was generally removable without material damage if properly removed. Any damage caused to the floor by Appellants was due to their negligence in removing the bar from the premises. Accordingly, we find the bar was a trade fixture utilized by Appellants in the operation of their coffee house, and Appellants were entitled to remove the same from the premises upon termination of the lease.
 {¶ 18} Appellants' first assignment of error is sustained.
 II. {¶ 19} In the second assignment of error, Appellants argue the trial court erred in awarding Appellee the cost to repair the hardwood floor in the leased premises upon termination of the lease.
 {¶ 20} The lease agreement reads at Item 12:
 {¶ 21} "Surrender-Tenant will surrender and deliver up the Premises at the end of the lease term in a good order and condition as of the date of execution hereof, reasonable use and natural wear and tear excepted."
 {¶ 22} It is undisputed at the time Appellants took possession of the premises the hardwood floor was in extremely poor condition. However, testimony at trial *Page 6 
demonstrated Appellee accepted a reduced amount of rent in exchange for Appellants repair and reconditioning of the floors.
 {¶ 23} William Baker testified at trial:
 {¶ 24} "Q. At the time the Wilson's signed the lease what was the condition of the hardwood floor on that first floor of the building?
 {¶ 25} "A. It needed work on it, it had glue on it and it needed to be finished but that was part of the condition for the price I set for the lease."
 {¶ 26} "Tr. at 72.
 {¶ 27} Upon review, the testimony demonstrates the parties contemplated Appellants would repair the floors to good condition upon taking possession of the premises in return for a reduced amount of rent. Accordingly, the hardwood floors were understood to be in good condition at the beginning of the lease. At the termination of the lease, the hardwood floors had many scratches from normal floor traffic, a Seattle's Coffee House logo inscribed in the floor, peeling near the front window and some heavier scratches and/or gouges caused by the Appellants' removal of the 22 foot bar. The later damages were not the result of reasonable use or natural wear and tear.
 {¶ 28} Based upon the above, the trial court did not err in awarding Appellee the cost of repairing the hardwood floors.
 {¶ 29} The second assignment of error is overruled.
 III. {¶ 30} In the third assignment of error, Appellants argue the trial court committed reversible error in awarding Appellee the cost to repair the rear door and replace the locks following a break-in to the premises. *Page 7 
 {¶ 31} Appellants maintain an intruder broke through the back door to the premises on August 10, 2003. Appellants filed a police report with the Millersburg Police Department, and sent a copy of the police report to Appellee.
 {¶ 32} Item 7(A) of the Lease Agreement states:
 {¶ 33} " . . . Tenant shall be responsible for repair and replacement of all glass windows, glass doors and exterior doors leading to the Premises, and the roof only if damaged by Tenant or its agents in repairing the HVAC systems."
 {¶ 34} Upon review of the above, the trial court erred in finding Appellants liable to Appellee for the cost of repair to the door and replacement of the locks. There was no evidence the damage was caused by Appellants or their agents.
 {¶ 35} Appellants' third assignment of error is sustained.
 IV. {¶ 36} In the fourth assignment of error, Appellants maintain the trial court erred in ordering they physically return the bar top to Appellee, contrary to the terms of the Lease Agreement.
 {¶ 37} The testimony at trial established William Baker gave Appellants permission to use 22 feet of old bowling alley maple flooring at the time the Lease Agreement was executed. The flooring was original flooring from a time the second floor of the building was known as the Ten Pin Club. Appellants utilized the flooring in constructing the top of the 22 foot bar. As discussed in our analysis and disposition of Appellants' first assignment of error, the bar was a trade fixture and not the property of Appellee under the terms of the lease. However, the bar top was made out of the *Page 8 
bowling alley wood flooring with the permission of William Baker to preserve the history of the building. Baker testified:
 {¶ 38} "Q. The top of the bar was made of what?
 {¶ 39} "A. Well I don't know exactly what it is made of but the reason I bought the building was the nostalgia of the area, the history of the area.
 {¶ 40} "* * *
 {¶ 41} "A. It was the history of the area and the second floor was a known club, a ten pin club that a lot of our people here were in and I heard the story about it and I was too young for that but the bowling alley floors were still there, three of them and when I first redid the building we saved those floors and stored them up there and then I took them up to my barn what was left and the largest piece I allowed the Wilson's to put on a bar if they were building a bar for that building.
 {¶ 42} "Q. You never intended to give that to them?
 {¶ 43} "A. Absolutely not. That was the reason I bought the premises was to keep the bowling of [sic] balls and the pins I had found there."
 {¶ 44} Tr. at 64-65.
 {¶ 45} In accordance, Appellant Andrew Wilson testified at trial he used the bowling alley flooring to construct the bar top.
 {¶ 46} Further, evidence at trial indicates Appellants sold the bar top to a bona fide purchaser who possessed a bill of sale for the purchase. At trial, Appellant Andrew Wilson testified: *Page 9 
 {¶ 47} "Q. Oh, okay, now you also and the Bill of Sale, actually has been filed, I think Mrs. Chmielewski's attorney had filed a Bill of Sale with this court and they filed an inter-pleader. Did you receive a copy of that Bill of Sale?
 {¶ 48} "A. Yes.
 {¶ 49} "Q. And is that a true and accurate copy of the agreement you had with Mrs. Chmielewski?
 {¶ 50} "A. Yes, it is.
 {¶ 51} "Q. It says on that she received the property on February 4, 2004?
 {¶ 52} "A. Correct.
 {¶ 53} Tr. at 101-103.
 {¶ 54} Accordingly, the trial court erred in ordering Appellant to return the bar top to Appellee, as Appellants could not legally comply with the Court's order. However, as the bar top was constructed out of old bowling alley flooring owned by Appellee William Baker and given to Appellants conditioned upon it remaining on the premises, we conclude the bar top was not the property of Appellants.
 {¶ 55} Accordingly, we sustain Appellants' fourth assignment of error, but remand the matter to the trial court to take additional evidence, if necessary, as to the value of the bar top and to enter an award in Appellees' favor for an ascribed monetary amount in lieu of its return. *Page 10 
 {¶ 56} For the reasons set forth above, the June 25, 2004 Judgment Entry of the
Holmes County Municipal Court is affirmed, in part; reversed, in part, and remanded to
the trial court for further proceedings in accordance with the law and this opinion.
By: Hoffman, P.J., Delaney, J. concurs; Edwards, J. concurs in part and dissents in part. *Page 11